UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LAVADRE DASHUN BUTLER, | ) C/A No. 4:14-2276-RMG-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Report and Recommendation |
| | ) |
| OFFICER (MR.) DURANT, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**PROCEDURAL HISTORY**

Plaintiff, who is proceeding pro se in this action, alleges causes of action under 42 U.S.C. § 1983. Presently before the Court are Plaintiff's motion for summary judgment (doc. #44) and Defendant's Motion for Summary Judgment (Doc. #49).[1] Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's Motion could result in a recommendation that the motion be granted. Plaintiff filed a Response on November 10, 2014. (Doc. #12 ). Defendants filed a response in opposition to Plaintiff's motion for summary judgment on January 2, 2015. (Doc. #54).

**STANDARD OF REVIEW**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. Because the present Motion is dispositive, this Report and Recommendation is entered for review by the district judge.

Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**FACTS**

In his complaint, Plaintiff alleges the following, quoted verbatim:

> Under color of state law, on June 13, 2012 aprox. 8:00 am Officer Durant disregarded policy and unlocked the entire bottom tier giving inmates unlimited access to Mr. Butler's room and leaving him vulnerable to a multitude of dangerous situations that Officer Durant was fully aware of seeing as for the past 2 weeks the dorm this incident occured in Darlington had been on lockdown for several weeks due to escalating circumstances.
>
> Due to the fact Mr. Butler's door was unlocked several inmates were able to and proceeded to go into Mr. Bulter's room, attack him as well as ransack his room for his valuables. Mr. Butler's attackers were able to capitalize off Mr. Durant's lack of professionalism, seeing as he did no cell check to ensure equal protection of the law for each inmate as well as their safety.
>
> Mr. Butler was able to escape out of the room and make it to the Officer's desk where Officer Durant was sitting, eating fruit, and having a conversation with another inmate. Mr. Butler told Officer Durant to open the door to the wing and let him off because he was "hurt bad". Officer Durant did not move from his seat until several moments later some commotion occured between several other inmates who were in the multi purpose room across the dorm from the officer's desk. The commotion then began to spread as Mr. Butler urged officer Durant to let him out or at least lock him in his room until things cooled down. As Mr. Butler continued to try and convince officer Durant to let him off the wing or in his room, he was then attacked by the same inmates who had now went to their rooms and come back with weapons consisting of locks attached to socks as well as homemade knives. Mr. Butler was then severely injured in front of the officer's desk as Durant refused to do anything to discontinue the attack on Mr. Butler.
>
> Following the attack Mr. Butler had to be hospitalized several times as well as endure the hardships of surgery, post surgery, as well physical therapy and the damage to his spiritual, mental, and natural well being. Mr. Butler will never be "as good as new" and is now scared for life and constantly haunted by this traumatic experience and the effects it continues to have on his life.

(Complaint).

Plaintiff seeks monetary damages and a declaration that constitutional rights were violated.

Defendant asserts that Plaintiff's claims do not rise to the level of a constitutional violation. He submits the affidavits of himself and Sgt. Anderson. (Docs. # 49-3 and #49-2, respectively). According to their affidavits, when in "general population," inmates are frequently out of the cells and together for various events such as mealtime, showers, and recreation. (Id.). They both state that Plaintiff never told either of them of a particular threat by another inmate. (Id.). Also, Sgt. Anderson states that Plaintiff never requested protective custody. (Doc. #49-2, ¶ 7). On the morning of the incident, both Defendant and Sgt. Anderson were "unlocking the bottom tier on the north side of the Darlington Unit so the inmates could go to breakfast." (Doc. 49-2, ¶ 2, doc. #49-3). Sgt. Anderson stepped off the wing to see if the cafeteria was ready for the inmates. (Doc. 49-2, ¶3). Defendant states that a commotion ensued, and that he immediately called for first responders and found that Plaintiff had been stabbed. (Doc. 49-3, ¶3). Sgt. Anderson indicates that a brief time after he stepped off the wing to check on the cafeteria, he heard Defendant call for first responders at approximately 9:15 a.m. (Doc. #49-2, ¶3). Sgt. Anderson states that he immediately responded and noticed Plaintiff standing by his cell covered with blood. He states that Plaintiff was immediately taken to medical. (Id.).

Plaintiff's version of the events differs from that of Defendant and Sgt. Anderson. Plaintiff submits his own affidavit indicating that the doors of his cell were left open which allowed other inmates to enter and assault him. (Doc. #57-1, ¶ 2, 3, 4) Most notably, he states that after being assaulted in his cell by a group of inmates, he located Defendant and made him aware that he was being attacked, was hurt, needed to get off the wing, and needed help. (Doc. 57-1, ¶ 5). He states that Defendant did not move from his seat "until several moments later some commotion occured(sic) between several other inmates who were in the multi purpose room. . . ." (Complaint ¶ 3). He states he was then attacked further in front of Defendant including being stabbed with a sharp object. (Doc. #57-1, ¶5).

4

## RISK OF HARM/FAILURE TO PROTECT

Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. In order to establish a claim for failure to protect under the Eighth Amendment, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir.2003) (internal quotation marks omitted). A prison official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety." Brown v. N.C. Dep't of Corrs., 612 F.3d 720, 723 (4th Cir.2010). "Mere negligence" by the prison official does not constitute deliberate indifference. Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Based on the record presented, an issue of fact exists as to whether Defendant was aware of a substantial risk of harm to Plaintiff and failed to act. Defendant asserts that he immediately called first responders when the commotion occurred. Plaintiff alleges that he was able to escape out of the room and make it to the Officer's desk where Officer Durant was sitting and asked him to open the door to the wing to let him off because he was "hurt bad." Plaintiff contends that Officer Durant did not move from his seat until several moments later when some commotion occurred between several other inmates who were in the multi purpose room across the dorm from the officer's desk. Plaintiff alleges that as he continued to try and convince officer Durant to let him off the wing or lock him

in his room, he was attacked by the same inmates who had gone to their rooms and came back with weapons consisting of locks attached to socks as well as homemade knives. Plaintiff asserts that he was "then severely injured in front of the officer's desk as Durant refused to do anything to discontinue the attack on Mr. Butler." (Complaint).  Therefore, Plaintiff argues that at the point when he reached the Officer and told him about the attack, Defendant Durant knew of the threat of risk of harm and failed to protect him and failed to take action to protect Plaintiff from the risk of harm. It is unclear exactly what opportunity Defendant had to protect Plaintiff.[2]  Defendant's version of events is materially different from that of Plaintiff. Defendant does not directly address Plaintiff's assertion that he solicited help from Defendant prior to the "commotion." In the light most favorable to the Plaintiff, Defendant did not act to protect Plaintiff when Plaintiff made him aware that he was hurt and "under attack" but waited until after Plaintiff was attacked to call the first responders.[3]  Therefore, summary judgment is not appropriate on Plaintiff's claim of failure to protect from a risk of harm against Defendant.

---

[2] Defendant does not directly address Plaintiff's allegation that he made him aware of the threat of danger asking to let him out or to lock him up in his cell and that Defendant failed to protect him which resulted in Plaintiff being attacked again and stabbed.

[3] Defendant raises the affirmative defense of qualified immunity. (ECF No. 12–1 at 17–19). The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The steps in determining whether officials are entitled to qualified immunity are: (1) an inquiry into whether the plaintiff has alleged a deprivation of a constitutional right and (2) whether that right was clearly established at the time of the alleged violation. Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir.2001). Under Plaintiff's version of the facts, Defendant's actions are not shielded by qualified immunity because a reasonable officer in that position would have understood that Plaintiff was at risk of further harm and would have protected him.

**CONCLUSION**

For the reasons discussed above, it is recommended that Plaintiff's motion for summary judgment (doc. #44) and Defendant's motion for summary judgment (doc. #49) be denied.

Further, it is recommended that any other outstanding motions be deemed moot.

                                      Respectfully submitted,

                                      s/Thomas E. Rogers, III
                                      Thomas E. Rogers, III
                                      United States Magistrate Judge

February 27, 2015
Florence, South Carolina

**The parties are directed to the important information on the following page.**

4:14-cv-02276-RMG     Date Filed 02/27/15     Entry Number 65     Page 7 of 7